UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Swain, et al.,

                Plaintiffs,                    **ORDER**

     -against-                                 20 Civ. 617 (AEK)

Jodlowski, et al.,

                Defendants.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

The Court is in receipt of the parties' submissions pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), which seek approval of the proposed settlement agreement in this Fair Labor Standards Act ("FLSA") lawsuit. ECF No. 33, 35 ("Cheeks submission"). When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), in determining whether such an agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020) (quoting Wolinsky, 900 F. Supp. 2d at 335).

After careful consideration of the parties' submissions, the Court concludes that it cannot approve the proposed agreement without additional information. First, the Cheeks submission does not provide sufficient detail to allow the Court to properly evaluate the terms of the

agreement.  Although the Cheeks submission includes information regarding the total dollar amount to which Plaintiffs assert they would be entitled if they were to prevail on all of their claims ("approximately $120,000"), the total dollar amount to be paid to Plaintiffs in the proposed settlement ($57,000), and the percentage of the Plaintiffs' share of the award that would be paid to each plaintiff, the submission does not explain how these dollar amounts and relative percentages were calculated.  Without this information, the Court cannot assess whether the proposed settlement agreement is fair and reasonable.  See, e.g., Cronk v. Hudson Valley Roofing & Sheetmetal, Inc., No. 20 Civ. 7131 (KMK), 2021 WL 38264, at *4 (S.D.N.Y. Jan. 5, 2021) ("Plaintiff does not provide an explanation of the methodology used to calculate this amount, or the underlying data on which the calculation is based.  The Parties must submit to the Court a more detailed explanation of Plaintiff's potential recovery at trial before the Court will approve the Settlement Amount."); Weng v. T&W Rest., Inc., No. 15 Civ. 09167 (PAE) (BCM), 2016 WL 3566849, at *3 (S.D.N.Y. June 22, 2016) ("However, the Court is unable to determine, based on the information submitted to date, whether the distribution of settlement funds among the nine plaintiffs is fair and reasonable . . . .  Without more explanation for the distribution of funds, I cannot approve the Agreement."); Flores-Mendieta v. Bitefood Ltd., No. 15 Civ. 4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016) ("In explaining how the settlement amount was calculated, Plaintiff simply gives the amount and states that it was based on employment records produced by Defendants without providing any details on the hours worked and wages paid . . . .  The Court cannot approve the settlement until the parties submit the underlying data regarding Plaintiff's hours worked and wages owed.").

Second, the settlement agreement itself includes what the parties describe as "mutual releases."  Courts in this District have approved FLSA settlements containing general releases in

cases where the plaintiffs are "former employees who have no ongoing relationship with the employer," and where the releases are "mutual in all respects." Souza v. 65 St. Marks Bistro, No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (emphasis in original); Khan v. Young Adult Institute, Inc., No. 18 Civ. 2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("General releases are permissible in FLSA settlements where plaintiff is no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual.") (collecting cases); see Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). "In order for a general release to be truly mutual and, thus, consistent with the primary remedial purpose of the FLSA, a plaintiff must receive general releases from all the persons and entities to whom he [or she] provides a general release." Clemente Vasquez v. T & W Restaurant, Inc., No. 18 Civ. 10167 (HBP), 2019 WL 2723835, at *3 n.2 (S.D.N.Y. July 1, 2019) (quotation marks omitted). While broad mutual release provisions may not be acceptable in every case, such provisions are appropriate here given that Defendants previously have initiated litigation against certain of the Plaintiffs in New York State court regarding different issues, and the settlement agreement specifically makes reference to the discontinuance of a New York State lawsuit as a factor in this agreement. There is a clear practical benefit to both Plaintiffs and Defendants to general releases that memorialize "a clean break in the parties' relationship." Id. at *3.

That said, the proposed release language in the settlement agreement is not sufficiently "mutual" for the Court to accept and approve the agreement. The list of claims or potential claims being released by Plaintiffs is far longer than the corresponding list for Defendants; the parties may have drafted the releases this way because certain claims are more likely to be brought by employees rather than by employers, but nevertheless, the effect here is that the

proposed release language appears imbalanced and does not properly reflect the mutuality that is required for Court approval of broad general releases. In addition, "DEFENDANTS Releasees" are defined as "Defendants, their successors, assigns and/or their past and/or present affiliates, agents, directors, trustees, board members, members, shareholders, principals, officers, agents, managers, employees, and/or their attorneys in both individual and/or representative capacities," while "PLAINTIFFS Releasees" are defined as "Plaintiffs, their successors, assigns and/or their past and/or present affiliates, agents, agents [sic], managers, and/or their attorneys in both individual and/or representative capacities." Courts approving mutual general releases have limited the parties to be released to "those acting on behalf of or in privity with the parties, and as to such persons or entities would be limited to claims arising from actions taken in their capacities as such." Souffrant v. 14-15 Mertens Place Corp., No. 19 Civ. 5482 (BCM), 2020 WL 1166231, at *3 (S.D.N.Y. Mar. 11, 2020) (internal quotation marks, emphasis, and citation omitted). Under this standard, the definitions of the releasees are overbroad, and encompass more than the parties likely intended. For the settlement agreement to be approved, these definitions must be limited in conformity with caselaw.

Third, there are a number of typographical or other errors in the settlement agreement that create ambiguity and confusion and need to be corrected by the parties. At the bottom of page 1 of the settlement agreement, the parties need to add the Index Number of the New York State Court Action. On page 2, in paragraph 1.b., the agreement should refer to "the Stipulation of Discontinuance of the New York State Court Action and Mutual Releases . . ." and "a Stipulation and Order of Dismissal With Prejudice of the Lawsuit (annexed hereto as Exhibit B and incorporated herein by reference) . . . ." On page 3, the paragraph immediately following 1.d.vi., refers to "this release agreement," and the paragraph at the bottom of the page refers to

"this Stipulation" and "this Settlement Agreement."  All of these references should be to "this Agreement."  On pages 4 and 5, the "Mutual Releases" provision refers to the New York City Paid Sick Leave Law and the New York City Administrative Code, but the Court is not aware of any basis for the parties to assert claims against each other arising out of their employment relationship under New York City law.  If the parties wish to keep these statutory references in the settlement agreement, then they should inform the Court of the basis for their inclusion.  In several places, the term "Releasees" is used when the term "DEFENDANTS Releasees" should be used instead:  (1) on page 5, in the third line of paragraph 5(a); (2) on page 6, in the fourth line of paragraph 6(b); (3) on page 7, in the third line of paragraph 7; and (4) on page 8, in the second line of paragraph 14(c).  On page 6, in the last line of paragraph 5(c), the word "Lawsuit" should be replaced with "New York State Court Action."  On page 7, in the first bullet point in paragraph 7, "for either Party" should be replaced with "for any Party."

   Finally, the Cheeks submission also does not provide enough information to allow for the assessment of the proposed attorneys' fees.  Plaintiffs' counsel seeks a fee award equal to one-third of Plaintiffs' recovery, plus an additional discount, but "even when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees."  Santos v. YMY Mgmt. Corp., No. 20 Civ. 1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021) (internal quotation marks omitted).  Plaintiffs' counsel therefore must submit contemporaneous time records and hourly rate information that would substantiate the fee application.  See Fisher, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs.").  In addition, the Cheeks submission does not explain the proposed $500 in expenses; if the $500 in expenses was for anything other than the case filing fee, counsel must

provide the underlying documentation for such expenses.  See, e.g., Saavedra v. Pick & Pack Produce Inc., No. 20 Civ. 3326 (BCM), 2020 WL 8513109, at *2 (S.D.N.Y. Dec. 21, 2020) (court could not approve expenses "based merely on a letter submitted by counsel," but took judicial notice of $400 filing fee).

The parties are directed to file a supplemental Cheeks submission containing both the information specified above and the revisions as directed by no later than **May 21, 2021**.

Dated: May 7, 2021
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge