UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Swain, et al.,

                      Plaintiffs,                      **ORDER**

        -against-                                     20 Civ. 617 (AEK)

Jodlowski, et al.,

                      Defendants.

------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      Currently before the Court is the parties' revised submission seeking approval of their settlement in this Fair Labor Standards Act ("FLSA") lawsuit pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), as well as a revised proposed settlement agreement. ECF No. 39 ("Suppl. Cheeks Mot."), ECF No. 40 ("Settlement Agreement"). These submissions were provided in response to the Court's May 7, 2021 order, which rejected the parties' original proposed settlement agreement and directed the parties to file a supplemental Cheeks submission (1) containing more information regarding the dollar amounts and relative percentages to be awarded to Plaintiffs, (2) revising the language in the mutual releases, (3) correcting typographical or other errors in the settlement agreement that create ambiguity and confusion, and (4) providing enough information to allow for the assessment of the proposed attorneys' fees. ECF No. 36 ("May 7 Order").

      First, Plaintiffs have provided the Court with an adequate explanation of the basis for the dollar amounts that they claim as damages and the relative percentages of the total settlement amount to be awarded to each Plaintiff, see Suppl. Cheeks Mot. at 2-3, 5-6, and based on this additional information, the Court finds Plaintiffs' monetary recovery to be fair and reasonable.

Pursuant to the terms of the Settlement Agreement, Plaintiffs will receive a total of $57,000 (out of a total of, at most, $105,800 in alleged wages and overtime owed).[1]  From this total settlement amount, $15,000 will be paid to Plaintiffs' counsel for attorneys' fees, and the remaining $42,000 will be allocated to the five Plaintiffs as follows:  Swain will receive $5,287.39 of her alleged overtime owed of $12,000 (a 44 percent recovery); Vasquez will receive $5,287.39 of her alleged overtime owed of $12,800 (a 41 percent recovery); Kiechle will receive $2,174.80 of her alleged overtime owed of $5,000 (a 43 percent recovery); Cerasaro will receive $14,625.21 of his alleged overtime owed of, at most, $70,000 (a 21 percent recovery); and Sciacovelli will receive $14,625.21 of her alleged wages owed of $6,000 (a 244 percent recovery).[2]  See Settlement Agreement ¶ 1.d.; Suppl. Cheeks Mot. at 2-3.  These percentages of recovery are in line with recovery amounts in other FLSA cases in this District where courts have approved settlement terms.  See, e.g., Santos v. YMY Mgmt. Corp., 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases).

Second, the Settlement Agreement again includes mutual general releases.  See Settlement Agreement ¶ 3.  In the May 7 Order, the Court explained that in this District, FLSA

---

[1] Plaintiffs assert that their total amount of unpaid wages and overtime is $120,000, see Suppl. Cheeks Mot. at 1, 3, but the evidence they cite in support of their claimed damages substantiates only a total amount of, at most, $105,800, id. at 2-3.

[2] While the recovery for Sciacovelli is, on its face, unusually and disproportionately high, the Cheeks submission provides a satisfactory explanation for why the settlement proceeds are to be allocated this way, and expressly notes that the Plaintiffs collectively agreed to an approach that took into account other critical factors that were relevant to the resolution of this matter and that warranted this larger share of recovery for Sciacovelli.  Suppl. Cheeks Mot. at 5-6.

settlements containing general releases have been approved in cases where the plaintiffs are "former employees who have no ongoing relationship with the employer," and where the releases are "mutual in all respects."  May 7 Order at 2-3 (quoting Souza v. 65 St. Marks Bistro, No. 15-cv-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (emphasis in original)).  The Court further explained that "[i]n order for a general release to be truly mutual and, thus, consistent with the primary remedial purpose of the FLSA, a plaintiff must receive general releases from all the persons and entities to whom he [or she] provides a general release."  Id. at 3 (quoting Clemente Vasquez v. T & W Rest., Inc., No. 18-cv-10167 (HBP), 2019 WL 2723835, at *3 n.2 (S.D.N.Y. July 1, 2019) (quotation marks omitted)).  More specifically, the Court explained that in cases in which mutual general releases have been approved, the agreements have limited the parties to be released to "those acting on behalf of or in privity with the parties, and as to such persons or entities would be limited to claims arising from actions taken in their capacities as such."  Id. at 4 (quoting Souffrant v. 14-15 Mertens Place Corp., No. 19-cv-5482 (BCM), 2020 WL 1166231, at *3 (S.D.N.Y. Mar. 11, 2020) (quotation marks, emphasis, and citation omitted)).

Unfortunately, the definition of "DEFENDANTS Releasees" in the Settlement Agreement has not been changed at all—that term is still defined as "Defendants, their successors, assigns and/or their past and/or present affiliates, agents, directors, trustees, board members, members, shareholders, principals, officers, agents, managers, employees, and/or their attorneys in both individual and/or representative capacities."  The definition of "PLAINTIFFS Releasees" has been changed to "Plaintiffs, and those acting on behalf of or in privity with them, and to such person[s] or entities only to claims arising from actions taken in their capacities," which is in accordance with the Court's directive (although it should actually read "in their

3

capacities as such").[3]  As the Court previously explained, mutual releases require parallel definitions of DEFENDANTS Releasees and PLAINTIFFS Releasees; it is not clear why the parties appropriately limited the scope of Plaintiffs' releasees but not Defendants' releasees.  The Settlement Agreement must be revised again so that there is an appropriate parallel structure between the definitions of the releasees.

The Court further explained in the May 7 Order that the lists of claims or potential claims being released by Plaintiffs and Defendants also had to parallel one another.  Id. at 3-4.  The claims and potential claims released in the revised Settlement Agreement are now sufficiently parallel to permit Court approval.

Third, the May 7 Order lists a number of "typographical or other errors" that created "ambiguity and confusion."  Id. at 4-5.  The revised Settlement Agreement corrects those errors.

Fourth, Plaintiffs' counsel has provided sufficient information to allow the Court to assess the proposed attorneys' fees to be recovered under the Settlement Agreement.  The proposed settlement provides for Plaintiffs' counsel to receive $15,000 in fees, which is less than one-third of the net settlement amount minus expenses of $500[4] ($57,000 - $500 = $56,500 ÷ 3 =

---

[3] For some reason, the definition of PLAINTIFFS Releasees appears in the second paragraph of the Mutual Releases provision of the Settlement Agreement, even though the concept of PLAINTIFFS Releasees appears in the prior paragraph of the Mutual Releases provision.  Specifically, in the first sentence of the first paragraph of the Mutual Releases provision, the parties refer to "Plaintiffs, and those acting on behalf of or in privity with them, and to such person[s] or entities only to claims arising from actions taken in their capacities" as releasing the DEFENDANTS Releasees.  See Settlement Agreement ¶ 3.  Again, for consistency and clarity, this reference should also read "in their capacities as such."

[4] In accordance with the May 7 Order, Plaintiffs' counsel explains that $400 in costs are attributable to the court filing fee and $98.58 are attributable to the process service fee.  See Suppl. Cheeks Mot. at 8; ECF No. 39-2 (billing records) at 1.  Plaintiffs' counsel also notes that an expense of $29.24 was incurred for LexisNexis legal research, but this amount was never billed to Plaintiffs.  Id.  But Plaintiffs' counsel does not seek to recover costs as part of the

4

$18,833.33). "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." Santos, 2021 WL 431451, at *2 (quotation marks and brackets omitted). "However, even when the proposed fees do not exceed one third of the total settlement amount, courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." Id. (quotation marks omitted). As directed by the May 7 Order, Plaintiffs' counsel has submitted contemporaneous time records and hourly rate information to substantiate the fee application.

Applying the lodestar method, Plaintiffs' counsel, Brooke D. Youngwirth, an attorney with 10 years of experience, and her paralegals, spent a total of 93.95 hours on this case. Suppl. Cheeks Mot. at 7-8; ECF No. 39-2. Youngwirth billed her time at an hourly rate of $300, and the paralegals billed their time at an hourly rate of $150. The total lodestar amount is thus $27,637.50. Because the Court finds the requested fee to be reasonable, it will not address whether the rate and number of hours expended on this case, as reflected in Plaintiffs' counsel's billing records, are themselves reasonable. The proposed fee of $15,000 represents approximately 54 percent of the lodestar amount, which is fair and reasonable given the facts and circumstances of this case. See Gervacio v. ARJ Laundry Servs. Inc., No. 17-cv-9632 (AJN), 2019 WL 330631, at *3 (S.D.N.Y. Jan. 25, 2019) ("The true lodestar amount is therefore greater than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees . . . .").

For the reasons stated above, the parties' supplemental application for Cheeks approval (ECF Nos. 39-40) is DENIED WITHOUT PREJUDICE to the parties reapplying for approval of

---

Settlement Agreement, and in fact has committed to repaying the costs paid by Plaintiffs to the Plaintiffs. Suppl. Cheeks Mot. at 6.

a settlement agreement that is revised to cure the above-noted deficiencies in the mutual release provision.

The Court is aware that a related matter is scheduled for trial in Dutchess County Supreme Court on December 6, 2021, and that the final resolution of this case may obviate the need for trial in the related action.  If the parties promptly file the proposed revised settlement agreement, the Court will be certain to act on that proposed revised settlement agreement immediately to avoid any interference with the Dutchess County matter.  Accordingly, and in light of the very small number of issues to be addressed, the parties are directed to file the proposed revised settlement agreement on or before November 12, 2021.  It is not necessary to file a further revised <u>Cheeks</u> submission, but the revised proposed settlement agreement must be accompanied by a cover letter that specifies exactly what has been changed in the new proposed settlement agreement as compared to the version at ECF No. 40, and must confirm that the changes listed in the cover letter are the only alterations to the document at ECF No. 40.

Dated: November 5, 2021
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge